UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

Nos. 97-30879,98-30132
_____


HERB FREILER; SAM SMITH, Individually and in
his capacity as Administrator of the Estate
of his minor child Steven Smith; JOHN JONES,

Plaintiffs-Appellees,

v.

TANGIPAHOA PARISH BOARD OF EDUCATION; E.F.
BAILEY; ROBERT CAVES; MAXINE DIXON; LEROY HART;
RUTH WATSON; DONNIE WILLIAMS, SR.; ART ZIESKE,
Individually and in their capacities as members
of the School Board; TED CASON, Individually and
in his capacity as Superintendent of Schools,

Defendants-Appellants.

_____

Appeals from the United States District Court for the
Eastern District of Louisiana, New Orleans
_____

January 24, 2000

<u>ON PETITION FOR REHEARING EN BANC</u>

(Opinion 8/13/99, 5th Cir., _____, _____ F.3d _____)


Before KING, Chief Judge, and POLITZ and BENAVIDES, Circuit Judges.

PER CURIAM:

The School Board contends that the panel opinion misquoted the disclaimer's language, substituting *and* for *or* in a disclaimer passage. The School Board is correct. The particular passage as stated in the disclaimer reads as follows:

"It is further recognized by the Board of Education that

it is the basic right and privilege of each student to form his/her own opinion *or* maintain beliefs taught by parents on this very important matter of the origin of life and matter."

The improper substitution of "and" for "or" does not affect the outcome of this case.

In denying rehearing, we emphasize that we do not decide that a state-mandated statement violates the Constitution simply because it disclaims any intent to communicate to students that the theory of evolution is the only accepted explanation of the origin of life, informs students of their right to follow their religious principles, and encourages students to evaluate all explanations of life's origins, including those taught outside the classroom. We decide only that under the facts and circumstances of this case, the statement of the Tangipahoa Parish School Board is not sufficiently neutral to prevent it from violating the Establishment Clause.

Treating the Petition for Rehearing En Banc as a Petition for Panel Rehearing, the Petition for Panel Rehearing is DENIED. The court having been polled at the request of one of the members of the court and a majority of the judges who are in regular active service not having voted in favor (Fed.R.App.P. and 5th Cir. R. 35), the Petition for Rehearing En Banc is DENIED.

**RHESA HAWKINS BARKSDALE, Circuit Judge, joined by E. GRADY JOLLY, PATRICK E. HIGGINBOTHAM, EDITH H. JONES, JERRY E. SMITH, EMILIO M. GARZA, and HAROLD R. DeMOSS, JR., Circuit Judges, dissenting from the denial of rehearing en banc:**

For the second time in less than a year, our court has refused to grant rehearing en banc to consider application of the Establishment Clause of the First Amendment to issues of exceptional importance to students, parents, and educators. *See* **Doe v. Santa Fe Indep. Sch. Dist.**, 168 F.3d 806 (holding unconstitutional, *inter alia*, student-led prayers before football games), *reh'g denied*, 171 F.3d 1013 (5th Cir.), *cert. granted*, ___ U.S. ___, 120 S. Ct. 494 (1999). I joined the dissent from the denial of rehearing in **Santa Fe**, and respectfully dissent from this denial, because I believe our court's recent Establishment Clause jurisprudence is not only inconsistent with Supreme Court precedent, as well as ours, but is also so erroneous and unwarranted it will be understood by some as being nothing less than hostile toward religion. *See id.; **Doe v. Beaumont Indep. Sch. Dist.**, 173 F.3d 274, *reh'g granted*, 173 F.3d 313 (5th Cir. 1999).

The panel strikes down a disclaimer from endorsement of the theory of evolution (the disclaimer), required to be read in Tangipahoa Parish schools at the start of a lesson on evolution. **Freiler v. Tangipahoa Parish Bd. of Educ.**, 185 F.3d 337 (5th Cir. 1999). Among other things, the disclaimer advises students that the lesson is "presented to inform [them] of the scientific concept and not intended to influence or dissuade the Biblical version of Creation or any other concept". The panel holds the disclaimer unconstitutional for *not* being neutral. **Id**. at 345-48.

But, in seeking to enforce constitutionally mandated neutrality, the panel has strayed, no doubt unintentionally, onto

3

a path of intolerance. *See* **Lynch v. Donnelly**, 465 U.S. 668, 673 (1984) ("Nor does the Constitution require complete separation of church and state; it affirmatively mandates accommodation, not merely tolerance, of all religions, and forbids hostility toward any"). Unfortunately, notwithstanding this case being one of "exceptional importance", as well as there being the necessity "to secure or maintain uniformity of [our] court's decisions", the very fodder for granting en banc rehearing pursuant to FED. R. APP. P. 35(a), our court does *not* think it necessary.

Immediately preceding this dissent is the statement crafted by the panel to explain why the disclaimer fails. Surely, that is the role of the opinion. In any event, this vague, good news for everyone statement (the disclaimer to the disclaimer) may provide comfort to those members of our court reluctant to allow en banc rehearing. We are now seemingly assured that, in general, disclaimers somewhat similar to the one at issue are constitutionally permissible; but informed that, "under the facts and circumstances of this case, the statement of the Tangipahoa Parish School Board is not sufficiently neutral to prevent it from violating the Establishment Clause".

With all due respect to the panel, this disclaimer to the disclaimer, while possibly being the balm necessary to save this case from being reheard en banc, does far more harm than good. For this extremely important and sensitive area of the law *and of life*, it does nothing but muddy the waters even more. (For starters, what does "not sufficiently neutral" mean?) Someone trying to

**4**

harmonize the panel's holding about the disclaimer and its disclaimer to the disclaimer could conclude, quite justifiably, that the disclaimer does *not* pass muster because of one simple fact: it mentions the Bible. Whether that be the panel's holding, or that be the reader's conclusion, there is consistency in one sense — each result should be of great concern to our court. Sadly, it does *not* appear to be so.

The now-operative disclaimer to the disclaimer was prompted by the panel holding that the Establishment Clause does *not* permit a teacher, at the start of a lesson on evolution, to read a statement informing students that the lessons are *not* intended to dissuade their beliefs in alternative concepts of the origin of life and matter; urging them to think critically about evolution and such alternative concepts; and reminding them of their right to form their own opinions *or* to maintain beliefs taught by their parents. (Interestingly, what the disclaimer to the disclaimer suggests would be permissible tracks the disclaimer quite closely.)

The disclaimer is required by the following resolution adopted in 1994 by the Tangipahoa Parish School Board:

> Whenever, in classes of elementary or high school, the scientific theory of evolution is to be presented, whether from textbook, workbook, pamphlet, other written material, or oral presentation the following statement shall be quoted immediately before the unit of study begins as a *disclaimer from endorsement of such [evolution] theory.*
>
> It is hereby recognized by the Tangipahoa Parish Board of Education, that the lesson to be presented, regarding the origin of life and matter, is known as the Scientific Theory of Evolution and *should be presented to inform*

5

> *students of the scientific concept and not intended to influence or dissuade the Biblical version of Creation or any other concept.*
>
> *It is further recognized by the Board of Education that it is the basic right and privilege of each student to form his/her own opinion* or *maintain beliefs taught by parents on this very important matter of the origin of life and matter.* *Students are urged to exercise critical thinking and gather all information possible and closely examine each alternative toward forming an opinion.*

(Emphasis added.) The panel opinion, in quoting the disclaimer, erroneously uses "and" instead of "or" in the above passage about a student's right "to form his/her own opinion *or*", *not and*, "maintain beliefs taught by [his/her] parents". 185 F.3d at 341. The disclaimer to the disclaimer acknowledges this error, but states that it "does not affect the outcome of this case".

The School Board advanced three purposes for the disclaimer: "(1) to encourage informed freedom of belief, (2) to disclaim any orthodoxy of belief that could be inferred from the exclusive placement of evolution in the curriculum, and (3) to reduce offense to the sensibilities and sensitivities of any student or parent caused by the teaching of evolution". *Id.* at 344. The panel concluded that the second and third purposes were permissible secular objectives. *Id*. at 345.

But, in a holding that overlaps with its holding that the disclaimer is *not* neutral, discussed *infra*, the panel decided that the first purpose was a "sham", concluding that the disclaimer furthered a contrary purpose: "the protection and maintenance of a particular religious viewpoint". *Id*. at 344-45. In so doing,

6

the panel interpreted the message of the disclaimer as telling students that "evolution as taught in the classroom need *not* affect what they already know"; and that this was "contrary to an intent to encourage critical thinking, which requires that students approach new concepts with an open mind and a willingness to alter and shift existing viewpoints".  *Id*. at 345 (emphasis added).

The first-purpose-is-a-sham-conclusion is unwarranted.  As noted, the panel misquoted the following portion of the disclaimer: "it is the basic right and privilege of each student to form his/her own opinion *or* [not "*and*", as the panel opinion mistakenly quoted] maintain beliefs taught by parents on [the] ... matter of the origin of life and matter".  This mistaken reading of the disclaimer *as conjunctive, rather than disjunctive*, perhaps explains why the panel discounted the disclaimer's clear message that, concerning the origin of life and matter, students are free to *either* maintain their current beliefs, including those taught by their parents, *or* to form their own, new, independent opinions.

In any event, the panel held that, on balance, the disclaimer survives the secular purpose prong of *Lemon v. Kurtzman*, 403 U.S. 602 (1971).  *Freiler*, 185 F.3d at 345.  But, it concluded that it was unconstitutional nevertheless, on the basis that it violates *Lemon*'s second prong (and the endorsement test of *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 605 (1989)):  its principal or primary effect impermissibly advances religion.  *Freiler*, 185 F.3d at 345-48.

**7**

As our court stated in **Doe v. Duncanville Indep. Sch. Dist.**, 70 F.3d 402, 406 n.4 (5th Cir. 1995), "the Establishment Clause [does not] prevent [school district] employees from treating students' religious beliefs and practices with deference and respect; *indeed, the constitution requires this*". (Emphasis added.) Along this line, the **Freiler** panel "acknowledge[s] that local school boards need not turn a blind eye to the concerns of students and parents troubled by the teaching of evolution in public classrooms". **Freiler**, 185 F.3d at 345-46. Obviously, those who might be so troubled might be those who believe in "the Biblical version of Creation".

Sadly, what the panel gives, it takes away. Notwithstanding the palaver about school boards *not* being required "to turn a blind eye to [such] concerns", the panel relied on "the interplay of three factors" in concluding that "the primary effect of the disclaimer is to protect and maintain a particular religious viewpoint, namely belief in the Biblical version of creation":

> (1) the juxtaposition of the disavowal of endorsement of evolution with an urging that students contemplate alternative theories of the origin of life; (2) the reminder that students have the right to maintain beliefs taught by their parents regarding the origin of life; and (3) the "Biblical version of Creation" as the only alternative theory explicitly referenced in the disclaimer.

*Id*. at 346.

1. *The juxtaposition of the disavowal of endorsement of evolution with an urging that students contemplate alternative theories of the origin of life.*

Considering the context in which the disclaimer is to be presented (at the start of a lesson presenting evolution as the *sole* explanation for the origin of life and matter), how can such "juxtaposition" impermissibly advance religion?

The theory of evolution may be viewed by some as anti-religious. The disclaimer recognizes this historic tension between evolution (scientific concept) and other theories or concepts about the origin of life and matter, using the "Biblical version of Creation" as but *an example* of such other concepts. And, it affirmatively notes that evolution is the *only* theory taught. In furtherance of the purposes to disclaim any orthodoxy of belief that could be inferred from the exclusive placement of evolution in the curriculum, and to reduce any resulting offense to students who adhere to concepts other than evolution, the disclaimer points out that the fact that evolution is the *only* such concept taught — "presented to inform students of [that] scientific concept" — is *not* intended to influence or dissuade any other concept, including the Biblical version. The disclaimer balances; it neutralizes; it is consistent with the requisite neutrality.

But, the panel construes the disclaimer's urging students to "exercise critical thinking" as being solely with respect to the Biblical theory, interpreting it as "encourag[ing] students to read and meditate upon religion in general and the 'Biblical version of Creation' in particular". *Id*. at 346. In so doing, the panel ignores the disclaimer's plain language (urging students to "closely examine *each* alternative", including evolution), as well

**9**

as the context in which the disclaimer is presented, *i.e.*, preceding a lesson which presents evolution as the *sole* explanation for the origin of life and matter. Therefore, the panel misunderstands the message.

The curriculum provides students with information about *only one concept* (evolution). The disclaimer's mere mention of the existence of other concepts, *without presenting any information about the content of those concepts*, neither gives any preferred status to, nor advances, any other concept, which students must make an additional effort to consider or learn, *outside the classroom*.

2. *The reminder that students have the right to maintain beliefs taught by their parents regarding the origin of life.*

As discussed, the panel's reliance on this factor *may* have resulted from its misquoting the disclaimer (failing to recognize the disclaimer's use of "or" rather than "and" between the phrases "form his/her own opinion" and "maintain beliefs taught by parents"). As noted, we are now told that this error "does not affect the outcome of this case". In any event, how does reminding students of their right to maintain beliefs taught by their parents regarding the origin of life and matter, *or* to form their own beliefs about the subject, advance religion? In that students are taught about only one such concept — evolution — there is "no realistic danger that the community would think that the [School Board] was endorsing religion or any particular creed, and any benefit to religion or to the Church would have been no more than

**10**

incidental". ***Lamb's Chapel v. Center Moriches Union Free Sch. Dist.***, 508 U.S. 384, 395 (1993).

3. *The "Biblical version of Creation" as the only alternative theory specifically referenced in the disclaimer.*

The panel reasoned that, because the only alternative theory identified in the disclaimer is a religious one, the disclaimer "serves only to promote a religious alternative to evolution". ***Freiler***, 185 F.3d at 348. (As discussed, this may be the hook on which the panel hangs its disclaimer to the disclaimer, denial of rehearing hat.) The reliance on this factor is misplaced, because the panel fails to take into account the disclaimer's audience. Yet, the panel acknowledges that, "[i]n assessing the primary effect of the contested disclaimer, we focus on the message conveyed by the disclaimer to the students who are its intended audience". ***Id***. at 346.

The record reflects that an estimated 95% of the parish students are adherents to the Biblical concept of creation. Accordingly, use of the "Biblical version of Creation" as an illustration of an alternative concept to evolution is hardly surprising. Because the overwhelming majority of the students expected to hear the disclaimer were familiar with that alternative concept, the reference serves to *give context to the message, but without promoting that concept or expressing intolerance for any other.* Surely, giving context to a message is an admirable method of instruction.

Contrary to the panel's interpretation, the disclaimer expressly encourages examination of "each alternative" concept for life's origin, including evolution, the Biblical version, and others that are *not* identified. Moreover, the panel erroneously assumes that all alternatives to evolution are religious in nature, ignoring the existence of non-religious theories, such as the "Big Bang" and panspermia (reproductive bodies of living organisms exist throughout the universe and develop wherever the environment is favorable).

Based on my review of the record, the language of the disclaimer, and the context in which it was intended to be used, the primary effect of the disclaimer is *not* to advance religion; instead, it is to advance tolerance and respect for diverse viewpoints. The record reflects that, to the overwhelming majority of the parish students, the scientific concept of evolution conflicts with their (or their parents') beliefs about the origin of life and matter; and its exclusive place in the curriculum had caused concern among students and parents. The disclaimer's message is one of respect for diverse viewpoints, informing students that teaching evolution as the sole concept for the origin of life and matter is *not* intended to influence or dissuade them from forming their own opinions about the subject *or* from maintaining beliefs taught by their parents.

In examining the disclaimer's effect, the panel erred by *not* considering the context in which the disclaimer was intended to be used. In the parish schools, evolution *is taught*; the "Biblical

**12**

version of Creation" *is not*!  How can the effect of the disclaimer be to endorse or advance a concept that is *merely mentioned*, using only four words, when evolution is the *only* concept for the origin of life and matter that is included in the curriculum, the only one that will be explained and discussed in any lesson following the disclaimer's being read?

Understood and considered in the context in which it is intended to be used, the disclaimer expresses tolerance for the views of all students.  A student who adheres to the concept of evolution and does *not* adhere to the Biblical version of creation is taught evolution; told the curriculum is *not* meant to disparage other concepts, including the Biblical version; and encouraged to think critically.  Likewise, a student who adheres to the Biblical version and believes it to conflict with the concept of evolution is taught evolution; told the curriculum is *not* meant to disparage other concepts; and encouraged to think critically.

As I noted in ***Murray v. City of Austin, Tex.***, 947 F.2d 147, 158 (5th Cir. 1991) (inclusion of Christian cross in city insignia held constitutional), *cert. denied*, 505 U.S. 1219 (1992), Justice Goldberg, in ***School Dist. of Abington Township, Pa. v. Schempp***, 374 U.S. 203 (1963), stated that "the measure of constitutional adjudication is the ability and willingness to distinguish between real threat and mere shadow".  ***Id***. at 308 (Goldberg, J., concurring).  The disclaimer, as did the city insignia in ***Murray***, casts a "mere shadow" near, *instead of being a "threat" to*, the principles underlying the Establishment Clause.  But, the panel has

**13**

transformed neutrality into intolerance. Accordingly, I respectfully dissent from the denial of rehearing en banc.